UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WENDY M.,                                    :
            Plaintiff,                       :
                                             :
            v.                               :        C.A. No. 24-208MSM
                                             :
FRANK BISIGNANO,                             :
Commissioner of the Social Security          :
Administration,                              :
            Defendant.                       :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Until April 29, 2022, when she was fifty-three, Plaintiff Wendy M. worked for many years as a personal care attendant assisting disabled individuals.[1] She is a high school graduate and attended college for one year. Alleging that she suffers from disabling pain, loss of strength and fatigue due to fibromyalgia and constant diarrhea and pain caused by longstanding irritable bowel syndrome ("IBS"),[2] on June 27, 2022, Plaintiff filed an application for disability insurance benefits ("DIB").

After denial at the initial and reconsideration phases, an administrative law judge ("ALJ") accepted as persuasive the prior administrative findings of the non-examining physician experts, Dr. Elaine Hom and Dr. Mitchell Pressman (collectively the "SSA experts") that Plaintiff can

---

[1] The record contains several references suggesting that Plaintiff continued to work as a personal care attendant after the alleged onset in April 2022, including the function report signed by her husband on August 1, 2022, (in response to a question regarding impact of conditions on ability to work, her husband responded that, "[s]he works with a handicap man . . . [i]f she tries to [put him in a wheel chair, get him in and out of vehicles], [s]he is in a lot of pain"), and the treating note following surgery on February 8, 2023, (patient indicates she is "currently employed" as "Direct Support"). Tr. 235, 1632. Nevertheless, while focusing on the reference in the husband's function report as evidence of an activity that clashes with Plaintiff's subjective statements, the ALJ accepted that Plaintiff had no substantial gainful employment after April 29, 2022.

[2] During the period in issue, Plaintiff was also treated for many other conditions, including obesity, hypertension, repeated bouts of infectious colitis, asthma, a small hiatal hernia/gastroesophageal reflux disease ("GERD") (for which she had successful surgery in January 2023), and occasional depression and anxiety. She has not challenged the ALJ's Step-Two determination that these are non-severe impairments.

perform light work with additional limitations and the portion of the RFC[3] opinion of a treating nurse practitioner providing gastroenterology services (Nurse Michael Moylan) in which he opined that Plaintiff retains the ability to perform light work.  At Step Two, the ALJ also accepted as mostly consistent with the record the findings of the non-examining expert psychologist at the initial phase, who considered Plaintiff's allegations of pain, her treatment and her activities of daily living ("ADLs") and assessed no more than mild psychiatric limitations, including no more than mild impact on the ability to concentrate, persist and maintain pace. Nevertheless, the ALJ found that Plaintiff's subjective statements regarding the intensity, severity and limiting effects of her symptoms are not entirely consistent with the medical and other evidence and rejected as unpersuasive the portion of Nurse Moylan's opinion in which he opined that IBS pain would cause Plaintiff to be off task more than a quarter of the workday and to be absent from work more than four days a month.  Based on these findings and his consideration of all of the evidence, including Plaintiff's testimony and statements, the function report submitted by her husband and the treating records for the period after the SSA experts' review, the ALJ concluded that Plaintiff has significant limits due to pain but retains the ability to work as a personal care attendant as generally performed in the national economy and has not been disabled at any relevant time.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application. ECF No. 11.  Plaintiff contends that the ALJ erred by failing to analyze the impact of fibromyalgia and pain consistent with the requirements of SSR 12-2p, Evaluation of

---

[3] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

Fibromyalgia, 2012 WL 3104869 (July 25, 2012), and SSR 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017).  Plaintiff also argues that the ALJ erred in discounting her subjective complaints and in failing to accept the portions of the Nurse Moylan opinion regarding off-task time and absenteeism.  Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 12.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     __Standard of Review__

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  See Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000); see also Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for further proceedings under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  <u>Id.</u> § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  <u>Id.</u> § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  <u>Id.</u> § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  <u>Id.</u> § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  <u>Id.</u> § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  <u>Sacilowski v. Saul</u>, 959 F.3d 431, 434 (1st Cir. 2020); <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  <u>See</u> 20 C.F.R. § 404.1520c.  A "medical opinion" is defined in the regulations as a statement that identifies specific functional "limitations or restrictions" "about what [claimants] can still do despite their impairments."  <u>Id.</u> § 404.1513(a)(2).  For purposes of documenting an impairment, a medical opinion must come from an "[a]cceptable medical source," which

includes a physician, a psychologist, a licensed advanced practice registered nurse or a licensed physician assistant opining within the scope of licensed practice.  Id. § 404.1502.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  The ALJ must make "an assessment of the supporting objective medical evidence and other medical evidence" and must consider "how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Medical source findings/opinions may not constitute substantial evidence if rendered by a source who was not privy to evidence that would materially detract from the force of the findings.  Jonathan G. v. Kijakazi, C.A. No. 22-107MSM, 2022 WL 17580663, at *6 (D.R.I. Dec. 12, 2022), adopted, 2023 WL 4077849 (D.R.I. May 3, 2023); Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018).

### C.    Claimant's Subjective Statements

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  Guidance in evaluating the claimant's statements regarding the intensity, persistence and limiting effects of subjective symptoms, including pain, is provided by SSR 16-3p, 2017 WL 5180304, at *2-4, which directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, other information and statements provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective

statements are consistent with the medical signs and laboratory findings.  Id. at *2-5.  As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms or other reason to question their credibility, such statements should be taken as true.  Sacilowski, 959 F.3d at 441.  That is, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding.  Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).  An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitations of function because of pain" is error.  Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *3 (D.R.I. Aug. 1, 2022) (internal quotation marks omitted), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022).

### D.    Fibromyalgia

To provide guidance to adjudicators facing disability claims based on fibromyalgia, the Commissioner issued SSR 12-2p, 2012 WL 3104869.  Emphasizing that subjective pain and fatigue can be disabling, SSR 12-2p sets out fibromyalgia's diagnostic criteria.  Patrick F. v. Kijakazi, C.A. No. 22-212MSM, 2023 WL 2770389, at *3 (D.R.I. Apr. 4, 2023), adopted, 2023 WL 6004594 (D.R.I. July 10, 2023).  SSR 12-2p makes clear that, "[a]s in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI [medically determinable impairment]" based on a diagnosis provided by a licensed physician who performed a physical examination.  SSR 12-2P, 2012 WL 3104869, at *2-4.  Once the claimant sustains his burden of establishing that fibromyalgia is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged, the

analysis proceeds to consider the intensity and persistence of pain and other symptoms to determine their impact on the claimant's ability to function. Id. at *5. It would be error for an ALJ to "basically rel[y] on the lack of objective findings to substantiate [a claimant's] condition, [when] such a lack is what can be expected in fibromyalgia cases." Johnson v. Astrue, 597 F.3d 409, 412-13 (1st Cir. 2009); Patrick F., 2023 WL 2770389, at *2–3. Nevertheless, the "mere diagnosis of a condition [like fibromyalgia] says nothing about [its] severity." Keach v. Berryhill, Civil Action No. 17-cv-10133-ADB, 2018 WL 1440316, at *12 (D. Mass. Mar. 22, 2018) (internal quotation marks omitted).

## III.   Analysis and Recommendations

### A.   Factual Background[4]

At the onset of disability on April 29, 2022, Plaintiff had a long history of IBS with diarrhea and constipation causing bowel movements three to four times a day and abdominal pain. See Tr. 521, 525. Yet until onset, she was active and able to work. Tr. 525 (despite "history of IBS with alternating diarrhea and constipation . . . she is active otherwise. She has been playing the role of Mrs. Santa Claus for years and she has worked the Polar express. She is otherwise a CNA and caretaker"); see Tr. 439-45 (as of April 2022, Plaintiff reports swimming "2x a week" for an hour, walking "2x a week" for "1/2 miles," yard work "when she can"; despite complaint of decreased energy and pain, findings on mental examination largely normal). During April and May 2022, Plaintiff experienced an exacerbation of abdominal pain and repeatedly went to emergency departments of various hospitals with complaints of significant

---

[4] This background is not based on findings of fact by the Court. Rather, it is a survey of the substantial evidence of record focused on the evidence that bears on the matters in issue, mindful that the Court's task is to do its "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion." Diane K. v. Kijakazi, C.A. No. 22-215WES, 2023 WL 8713695, at *7 (D.R.I. Dec. 18, 2023) (internal quotation marks omitted), adopted by text order (D.R.I. Jan. 23, 2024).

abdominal pain.  See e.g. Tr. 467-572, 687-728.  Based on her complaints, morphine was administered as a temporary measure.  See e.g., Tr. 513, 710, 1138-39.  Despite extensive testing and her "verbally aggressive" (Tr. 486) subjective complaints, other than abdominal tenderness and a small hiatal hernia, no objective findings were made.  Tr. 469-76 (despite complaints of abdominal pain, constipation and nausea, only finding abdominal tenderness; discharged home as stable); Tr. 473 ("small" hernia with no obstruction or inflammation observed on CT scan); Tr. 520, 548 (although admitted briefly and given morphine because of complaints of pain, provider notes that "patient continued to have significant pain even though she looked comfortable and even though her abdominal exam was soft and benign"); Tr. 728, 736 ("[n]o etiology for left upper quadrant pain . . . documented").

Also in April 2022,[5] a rheumatologist[6] observed extensive tender points and diagnosed Plaintiff with fibromyalgia.  Tr. 1856-57.  As treatment, she recommended over-the-counter pain medication ("Tylenol and nonsteroidals") as needed, sleep management, low impact exercise and follow up to address symptoms.  Id.  The rheumatologist notes reflect that Plaintiff reported a disability application and that she advised: "Disability application per pcp, if appropriate."  Tr. 1872, 1879.

In June 2022, Plaintiff followed up with her primary care physician, Dr. Kim Stein.  Dr. Stein noted complaints of myalgias and abdominal pain, including Plaintiff's statement that she

---

[5] In September 2021, a different rheumatologist considered Plaintiff's complaint of fibromyalgia but found no "underlying rheumatic disorder."  Tr. 678-84.

[6] For reasons not disclosed by the record, this rheumatologist's records were not submitted until after the ALJ hearing, although the primary care records that refer to the diagnosis and treatment of fibromyalgia were submitted.  Importantly, Plaintiff has not argued that the SSA experts' lack of access to the rheumatologist's records taints the reliability of their findings.  Mindful that the SSA experts accepted fibromyalgia as an impairment and pain as a limiting symptom, I agree.  That is, I find that the ALJ's determination that the rheumatologist's records show no material adverse change in Plaintiff's condition, Tr. 22 n.5, and do not detract in any respect from the force of the SSA experts' findings, Jonathan G., 2022 WL 17580663, at *6, is well supported and consistent with applicable law.

felt unable to work due to pain.  Tr. 1292-99.  Despite Plaintiff's request, Dr. Stein declined to "attest[] to [long term disability]," but would "extend her leave to the end of July for further work up."  Tr. 1299.  On physical examination, Dr. Stein made normal observations, including no acute distress, no abdominal findings of tenderness, and normal range of motion.  Tr. 1297.

Prior to and during the period in issue, Plaintiff was seen by various practitioners at University Gastroenterology for treatment of IBS symptoms.  Tr. 573-676, 1270-83, 1582-85.  One of these is a nurse practitioner, Nurse Moylan, whom Plaintiff saw several times,[7] two, possibly three, times during the period in issue.  In June 2022, despite complaints of abdominal pain, nausea and vomiting, Nurse Moylan noted that Plaintiff was in no acute distress, had no abdominal tenderness, walked without difficulty with normal digits and extremities.  Tr.  634-36.  His notes reference the pattern of recent visits to "ER," with relatively unremarkable workup, as well as that she had recently had an infectious abdominal condition.  Tr. 636.  These notes contain no reference to bowel frequency limiting the ability to function.  Plaintiff's next gastroenterology appointment (with an unspecified provider) reflects Plaintiff's report that she swims and "walk[s] usually everyday if feeling well."  Tr. 632.

In September 2022, Dr. Stein saw Plaintiff again.  She noted that Plaintiff was being followed in Boston in connection with the small hernia and GERD, but also recorded that Plaintiff's abdominal pain seemed to be "improving."  Tr. 1538-39, 1544.  Regarding fibromyalgia, Dr. Stein noted only that it was still active and that Plaintiff was waiting to be seen at a specialty clinic.  Tr. 1544.  On examination, Dr. Stein noted that Plaintiff appeared to be in no acute distress with normal range of motion throughout the musculoskeletal system; he did not note any abdominal tenderness.  Tr. 1542.

---

[7] There is one gastroenterology appointment where the provider's identity is not included.

Other than the rheumatologist's records, all the records summarized above were reviewed by the two SSA experts, who opined that Plaintiff suffered from severe impairments to include arthropathies, skeletal spine disorders and fibromyalgia (of which IBS is a symptom) but that she retained the ability to perform light work with significant postural and some environmental limitations due to abdominal pain, joint pain, chronic pain and low back pain, neuropathy, bowel issues and "[s]ome limitations in ADLs." Tr. 68-71, 79-80. Neither of the SSA experts found that Plaintiff would be off-task or absent to a degree that would preclude work. At both the initial and reconsideration phases, there is an assessment that the extent and the severity of Plaintiff's subjective symptom of "pain" is only partially consistent with the total medical and non-medical evidence in the file. Tr. 70, 79-80.

After the file review by the SSA experts, Plaintiff's medical treatment continued. Her principal medical intervention during this period was surgery in January 2023 to address the small hernia and significant GERD; the parties do not dispute that this surgery successfully resolved a condition that is not in issue.[8] Tr. 1632 (after surgery, no problem with GERD and "satisfactory wound healing and uncomplicated postoperative course"). By February 2023, the treating record contains a note stating that Plaintiff was cleared to return to work with no limitations. Tr. 1837. Post-file-review, treatment with Dr. Stein also continued; Dr. Stein's notes for this period reflect that Plaintiff's fibromyalgia and IBS were still symptomatic and that Plaintiff was still trying to get into a fibromyalgia clinic, but in the meantime Dr. Stein recommended that Plaintiff "work on diet and exercise." Tr. 1714. Plaintiff reported that she

---

[8] Plaintiff argues that the ALJ's fibromyalgia/IBS analysis is flawed by his failure to consider the pre-operative notation of the surgeon (Dr. Dieter Pohl) who performed this procedure expressing the concern that due to Plaintiff's "fibromyalgia, IBS, diarrhea, abdominal pains . . . her recovery will be also much more difficult." Tr. 1639. The post-operative medical records reveal that this concern was unfounded. E.g., Tr. 1632 ("uncomplicated postoperative course"). I find no error in the ALJ's failure to highlight the pre-operative note.

was doing "some crafting and trying to sell her work." Tr. 1710. As of the last appointment of record (January 24, 2023), Dr. Stein's physical examination yielded all normal observation including no acute distress, no abdominal tenderness and normal range of motion. Tr. 1747. Plaintiff also had one post-file-review appointment with Nurse Moylan of University Gastroenterology (on November 22, 2022). These notes reflect Plaintiff's complaints of abdominal pain, bowel issues, heartburn[9] and bleeding but entirely normal observations on examination, including no acute distress, no abdominal tenderness and no issues with fingers or extremities. Tr. 1582-1584. Nurse Moylan noted "[o]n current regimen having BMs, she will continue" prior treatment. Tr. 1584. His notes contain no findings either of pain or of the need for use of a bathroom at a level of intensity to cause significant off-task time or absenteeism.

B.    **Analysis of Fibromyalgia/Pain**[10]

Plaintiff contends that the ALJ erred in finding that the symptoms of fibromyalgia – principally pain and fatigue – are not work preclusive by inappropriately focusing only on limited objective evidence in contravention of SSR 12-2p, 2012 WL 3104869 and Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2010).[11] With only her own subjective statements and part of

---

[9] Plaintiff's complaint of heartburn (GERD) was successfully addressed surgically less than two months later.

[10] The Court notes that Plaintiff's primary symptom is pain, which is variously attributed to fibromyalgia and, to the extent that the pain is abdominal, to IBS, which, as Plaintiff correctly points out, is a condition that is recognized as a sign/symptom that is commonly comorbid with fibromyalgia. SSR 12-2p, 2012 WL 3104869 at *3 & nn.9 &10. In this report and recommendation, I have organized Plaintiff's arguments as she did in her brief, focusing first on fibromyalgia (and pain) and then on IBS. Based on this organizing principle, pain – whether attributed to fibromyalgia or more specifically to IBS – is covered in this section. My analysis *infra* of the ALJ's approach to IBS is limited to the IBS-specific symptom of constant diarrhea causing the frequent need to rush to the toilet and resulting in work-preclusive off-task time and absenteeism.

[11] Without explaining why it matters, Plaintiff also argues that the ALJ erred in simply accepting as medically determined Plaintiff's diagnosis of fibromyalgia without parsing how the diagnostic criteria in SSR 12-2p mesh with the rheumatologist's findings. This argument is puzzling because the ALJ accepted fibromyalgia as an impairment and accepted the SSA expert findings that Plaintiff's RFC is adversely impacted by the pain, fatigue and the other symptoms that fibromyalgia caused. See Ana D. v. O'Malley, C.A. No. 23-387WES, 2024 WL 3886655, at *5 (D.R.I. Aug. 20, 2024) (no error where ALJ accepted diagnosis of fibromyalgia despite lack of clarity regarding SSR 12-2p criteria because ALJ properly focused on impact of pain and other symptoms on Plaintiff's ability to function), adopted by text order (Sept. 4, 2024). The argument will not be discussed further.

Nurse Moylan's opinion to support her claim that these symptoms are disabling, Plaintiff relatedly argues that the ALJ failed adequately to explain why he discounted her complaints, rejected the pertinent part of the Nurse Moylan opinion and relied instead on the findings of the SSA experts and other evidence. In particular, Plaintiff contends that the ALJ failed adequately to consider medical observations that her abdominal area was sometimes tender and that she was occasionally treated for pain with strong pain medication – morphine and Tramadol.

Plaintiff's argument founders first because it is not accurate to posit that the ALJ focused exclusively or excessively on the many largely normal objective findings in this extensive record (for example, MRI, CT scans, colonoscopy, endoscopy, nerve conduction study, laboratory analyses and much more). To the contrary, the ALJ also focused on Plaintiff's subjective statements, including in her testimony, and on:

- Plaintiff's undisputed lack of more than mild limits impacting her capacity for concentration/persistence/pace;

- Plaintiff's daily activities, particularly as described in her husband's function report;[12]

- Plaintiff's own description of her daily activities (including household chores, shopping and crocheting);

- Plaintiff's many findings on physical examinations (performed specifically to explore the source and intensity of her complained-of pain) of no tenderness in the abdominal and other areas of the body, normal range of motion and normal musculosketal system, interspersed with occasional findings of abdominal tenderness and "sporadic 'diffuse tenderness'" Tr. 21;

- The consistent finding on examination that Plaintiff exhibited no acute distress;

---

[12] As the ALJ correctly noted, the third party function report signed by Plaintiff's husband well after the alleged onset of disability states that she was still able to care for a handicapped person, but was limited by pain in putting the person in a wheelchair or in and out of a vehicle; that she was able to care for pets; that her daily routine was to drive to work and "come[] home to & help with household chores & yard work"; and that she is "fine" with mental/social functioning, although pain impacts her sleep and that she sleeps near a bathroom. Tr. 20.

- Plaintiff's conservative treatment with medications and the recommendation to lose weight and remain active;

- The persuasive portion of Nurse Moylan's RFC opinion that finds Plaintiff capable of performing light work;

- The persuasive findings of the SSA experts, who deployed their expertise to analyze the functional impact of Plaintiff's complained-of pain and other fibromyalgia symptoms and found that Plaintiff remained capable of light work with additional limits.

See generally Tr. 18-22 & n.4. In short, with fibromyalgia established, the ALJ appropriately "consider[ed] all of the evidence in the case record, including [Plaintiff's] daily activities, medications or other treatments . . . to alleviate symptoms" as required by SSR 12-2p, 2012 WL 3104869, at *5. See V. James F. v. Kijakazi, C.A. No. 22-230JJM, 2023 WL 3223790, at *6-8 (D.R.I. May 3, 2023) (rejecting argument that ALJ was overly reliant on objective evidence based on ALJ's analysis of complaints of pain, including consideration of provider notes reflecting no findings on examination). Further, as held in V. James F., 2023 WL 3223790, at *7, the Court may also consider that its own review of this record revealed other evidence confirming that the ALJ's findings are well supported, including that both the treating primary care physician and the treating rheumatologist were asked but declined to opine on disability and the treating post-surgical provider cleared Plaintiff to work without limitations soon after the GERD/hernia surgery. Tr. 1298-99, 1837, 1894.

Nor should the Court accept Plaintiff's contention that the ALJ erred in relying on the SSA experts[13] because they made their findings under the "mistaken impression" that Dr. Stein

---

[13] In passing, Plaintiff also makes the undeveloped argument that the SSA expert findings do not amount to substantial evidence because they are stale. This argument fails not only because it is deemed waived as undeveloped, Julee A. v. O'Malley, C.A. No. 23-209MSM, 2024 WL 1880762, at *8 (D.R.I. Apr. 30, 2024), adopted, 2024 WL 2701643 (D.R.I. May 24, 2024), but also because Plaintiff points to nothing in the post-file review record that establishes a sustained and material worsening of her condition or other evidence that would undermine the SSA expert findings, which is essential for such an argument to succeed. See Jonathan G., 2022 WL 17580663, at *6.

had opined that her prescription for an SSRI had specifically improved fibromyalgia pain.  ECF No. 11-1 at 23.  In fact, the treating record on which Plaintiff relies reflects Dr. Stein's note that depression was improving on the prescribed SSRI, that fibromyalgia remained active and that Plaintiff's "intractable abdominal pain [s]eem[s] to be improving."  Tr. 1544 (emphasis added). This record is accurately summarized in the reconsideration phase case analysis: "some improvement on SSRI"; this case analysis does not say that fibromyalgia pain improved in response to the SSRI.  Tr. 77.  Thus, it is simply incorrect to posit that the SSA experts were under any "mistaken impression."  I find that their expert findings constitute substantial evidence on which the ALJ was entitled to rely.

Nor is the ALJ's analysis undermined by the ALJ's failure to mention the handful of times when stronger pain medication (morphine and Tramadol) was administered.  Read in context, each of these reflects a temporary measure based on Plaintiff's complaints of pain.  For example, during the period in April/May 2022, when Plaintiff repeatedly went to various emergency rooms she was given morphine.  See Tr. 513, 707, 710 (on April 30, 2022, Plaintiff given morphine at Landmark emergency room based on complaint of pain; transferred to Rhode Island Hospital for MRI and lumbar puncture); Tr. 1139 (on May 1, 2022, Plaintiff given morphine at Rhode Island Hospital but discharged same day with instruction to take Tylenol for pain); Tr. 1167 (on April 25, 2022, Plaintiff given morphine at Miriam Hospital emergency room; discharged same day as stable without prescription for opioid-based medication).  In addition, Plaintiff points to one instance where Plaintiff herself reported that she had been prescribed Tramadol for abdominal pain, Tr. 525,[14] and one instance where Dr. Stein prescribed Tramadol

---

[14] During the same May 17, 2022, encounter, Plaintiff also claimed that she had lost "20 pounds since Easter."  Tr. 525.  Easter fell on April 17 in 2022.  The Court notes that this information provided by Plaintiff to a treatment provider appears to be objectively false in that, during the April/May 2022 period, the record reflects that Plaintiff was gaining, not losing, weight.  Compare Tr. 391 (Plaintiff advises weight loss clinic that her current weight as of

but "<u>for short term use</u>." Tr. 1343 (emphasis added).  It is noteworthy that, during one of these encounters where a narcotic pain medication had been administered, a provider noted the disconnect between his clinical observations and Plaintiff's complaint of pain.  Tr. 548 ("patient continued to have significant pain even though she looked comfortable and even though her abdominal exam was soft and benign").

I find that these isolated instances reflecting the use of stronger pain medication in response to Plaintiff's complaints do not require remand because this record is replete with substantial evidence of Dr. Stein's conservative longitudinal treatment of fibromyalgia with NSAIDs, antidepressants, diet and exercise, as the ALJ found.  <u>E.g.</u>, Tr. 1367 (for "Fibromyalgia/Body aches . . . will try NSAID to help with the pain/aches. Advised to continue to exercise regularly" "celecoxib (CeleBREX)"); 1530 ("Fibromyalgia Discussed options for therapy.  Would ideally start her on SSRI or SNRI [antidepressants]"); Tr. 1544 ("Fibromyalgia Active, she is waiting to get seen at a specialty clinic."); Tr. 1714 ("Fibromyalgia . . . Still symptomatic.  Discussed trying to get into the Fibromyalgia clinic.  In the meantime work on diet and exercise."); Tr. 1749 ("Fibromyalgia Chronic, saw rheumatology, on SSRI.  Advised regular exercise.").  Conservative treatment of pain is also consistent with the treating recommendation of the rheumatologist.  Tr. 1856-57 (advises Tylenol and nonsteroidals, cognitive behavioral therapy and low impact aerobic exercises such as walking, swimming, aqua therapy, yoga, tai chi).  Nurse Moylan's treatment was similarly conservative, based on constipation medications (Miralax and Linzess), Lyrica and an antidepressant.  Tr. 636, 1584-85. And the records reflecting the temporary administration of narcotic pain medication were all

---

April 12, 2022, was 220 pounds, <u>with</u> Tr. 1341 (weight on May 3, 2022, is 221 pounds), <u>and</u> Tr.1320 (weight on May 16, 2022, is 224 pounds), <u>and</u> Tr. 527 (weight on May 17, 2022, is 228 pounds).  <u>Thomas v. Cox</u>, 3:13-cv-00508-RCJ-CBC, 2019 WL 2509023, at *6 (D. Nev. May 3, 2019) (courts "routinely take judicial notice of the dates in which certain holidays fall upon during a given calendar year").

reviewed by the SSA experts, whose expert analyses of the impact of Plaintiff's pain were foundational to the ALJ's decision.  See Ana D. v. O'Malley, C.A. No. 23-387WES, 2024 WL 3886655, at *5 (D.R.I. Aug. 20, 2024) (no error where ALJ did not entirely discount claimant's complaints of pain in reliance on persuasive non-examining psychologist/psychiatrist findings), adopted by text order (D.R.I. Sept. 4, 2024).

Nor do I find any error in the ALJ's approach to Plaintiff's subjective statements about the intensity of her symptoms, which he found to be "not entirely consistent with the record."  Tr. 20.  For starters, the ALJ appropriately points to Plaintiff's husband's function report – which states that Plaintiff could still care for the handicapped man (but not move him to a wheelchair or vehicle), drove to and from work and could do chores after getting home from work – as substantial contradictory evidence.  Tr. 20.  The ALJ also appropriately juxtaposed Plaintiff's extreme description of her symptoms with the many findings – "nontender . . . no tenderness" "no acute distress . . . normal . . . negative . . . intact . . . regular . . . clear . . . no focal deficits" – on physical examination by an array of medical providers exploring the location and intensity of the pain.  Tr. 20-21.  Relatedly, the statements in Plaintiff's own function report about her ability to lift (up to twenty pounds), walk (a mile) and sit/stand (can do as long as not for "prolong[ed] periods") differ materially from her extreme hearing testimony (walking limited to ten minutes, standing limited to ten to fifteen minutes, lifting limited to five to fifteen pounds) and are supportive of the ALJ's credibility finding.  Tr. 54-56, 248.  Nor is there any error in the ALJ's reliance on the persuasive findings of the SSA expert, which clash materially with Plaintiff's subjective statements at the hearing.

Plaintiff's final attack on the ALJ's fibromyalgia/pain determination focuses on the portion of the Nurse Moylan opinion that, despite finding her able to perform light work,

17

Plaintiff would be materially off-task and/or absent due to the "[e]ffects of pain."[15]  Tr. 1917. Here too I find no error in the ALJ's determination that this part of the opinion clashes not only with the SSA experts' findings, but also with the physical abilities endorsed in Nurse Moylan's treating record, Tr. 22, in that Nurse Moylan's two treating notes for the period in issue consistently reflect findings of no acute distress, no abdominal tenderness, no difficulty walking and normal digits and extremities.  Tr. 635, 1584-86.  Nor do I credit Plaintiff's somewhat illogical[16] attack on the ALJ's reliance on the other portion of Nurse Moylan opinion – that Plaintiff's RFC permits light work.  Plaintiff contends that this was error because, as a member of the gastroenterology team treating IBS, Nurse Moylan's opinion is not substantial evidence to support RFC findings based on fibromyalgia pain.  This argument fails because the Moylan treating notes are clear that Nurse Moylan's attention to abdominal pain included consideration of Plaintiff's diagnosis of fibromyalgia, Tr. 633 (Nurse Moylan's summary of Plaintiff's complaints focuses on abdominal pain, constipation, diarrhea, and "fibromyalgia as well"), as well as because Nurse Moylan's RFC opinion is generically based on his observations of Plaintiff's "ability to do work related activities."  Tr. 1916.  That is, the form presented to Nurse Moylan did not ask him to limit his observations to symptoms solely attributable to IBS.  I find no error in the ALJ's approach to the Moylan opinion.

---

[15] The Court notes that the Nurse Moylan opinion also contains the unsupported finding that Plaintiff's attention/concentration is materially impaired.  Tr. 1916.  Plaintiff does not rely on this portion of the Moylan opinion, which clashes with the medical record and the ALJ's unchallenged reliance on the initial phase non-examining psychological expert who found that Plaintiff's ability to attend/concentrate/persist/maintain pace is intact with at most a mild impairment.  Nurse Moylan's treating notes also clash with this aspect of his opinion.  Tr. 635-36 (normal psychiatric findings); Tr. 1584 (same).  The Court notes that Nurse Moylan's inclusion of this unsupported and inconsistent finding in his opinion tends to confirm the ALJ's determination that the related opinions (about off-task time and absenteeism) are unpersuasive.

[16] Thus, Plaintiff asks the Court simultaneously to find error in the ALJ's reliance on Nurse Moylan's opinion about how pain impacts Plaintiff's RFC and in the ALJ's failure to rely on Nurse Moylan's opinion that the same pain would cause substantial off-task time and absenteeism.

At bottom, remand should not be ordered because the ALJ accepted the diagnosis of fibromyalgia and appropriately focused on the full range of evidence of the intensity and persistence of pain and related symptoms to determine their impact on Plaintiff's ability to function.  Ana D., 2024 WL 3886655, at *5; see, e.g., Lindsay L. v. Comm'r of Soc. Sec., C.A. No. 22-00016-JJM, 2022 WL 4724098, at *9 (D.R.I. Oct. 3, 2022) ("Plaintiff's fibromyalgia pain and other symptoms did not affect her functioning to the extent alleged, e.g., she routinely was in no apparent distress, had a normal gait and balance, and showed intact strength and sensation in her extremities."), adopted by text order (D.R.I. Oct. 25, 2022), aff'd sub nom. Lesieur v. O'Malley, No. 23-1022, 2024 WL 513702 (1st Cir. Feb. 8, 2024); Nicole C. v. Saul, C.A. No. 19-127JJM, 2020 WL 57727, at *5-6 (D.R.I. Jan. 6, 2020) (affirming the ALJ's reliance on findings that included normal gait, strength and range of motion in a fibromyalgia case), adopted by text order (D.R.I. Jan. 23, 2020).  Plaintiff's fibromyalgia/pain argument also fails because there is no persuasive opinion from any source supportive of her contention that her fibromyalgia symptoms – particularly pain – resulted in work-preclusive limitations.  Having reviewed the entirety of the record, I find that the ALJ's handling of this issue is consistent with applicable law and amply supported by substantial evidence, including the findings of the SSA experts and the persuasive portion of the opinion of Nurse Moylan.  I do not recommend remand for further consideration of fibromyalgia/pain.

### C.    Analysis of Irritable Bowel Syndrome

Plaintiff's challenge to the ALJ's approach to her IBS symptoms is focused on her subjective statements during the ALJ hearing that uncontrolled diarrhea causes her to use the bathroom five to seven times a day (or even all day), three to four times a week.  Tr. 52-53.  She alleges that the ALJ erred in failing to adjust her RFC to reflect this symptom, which she asserts

results in off-task time and absenteeism that precludes all work.[17]  Plaintiff also contends that the ALJ failed adequately to explain why he discounted Plaintiff's statements about diarrhea, and relied instead on the SSA experts and the non-examining psychologist at the initial phase, who examined Plaintiff's medical record and concluded that Plaintiff's has no more than mild limitations with attention and concentration and that she is able to work a normal workweek at the light exertional level.

This argument fails because, except for Plaintiff's hearing testimony, which the ALJ appropriately discounted as noted *supra*, there is a dearth of evidence of the sort that has been held to support a claim that impaired bowel function results in the unscheduled need to use the bathroom at a level that precludes work.[18]  See Denise D. v. O'Malley, C.A. No. 23-233-PAS, 2024 WL 3329473, at *4 (D.R.I. July 8, 2024) (disabling need for frequent unscheduled bathroom breaks supported by observations of home health nurses and opinions of two treating gastroenterologists).  More importantly, in addition to the SSA experts' findings, there is ample substantial evidence to support the ALJ's finding that Plaintiff's statements that her bowel movements would cause work-preclusive absenteeism and off-task time are inconsistent with the evidence.  For starters, as the ALJ appropriately noted, Plaintiff's IBS was longstanding, and its

---

[17] In addition to her testimony, Plaintiff also purports to rely on Nurse Moylan's opinion that, despite her RFC permitting light work, Plaintiff would be off task more than a quarter of the workday and would be absent from work more than four days a month.  Tr. 1916-19.  The problem with this argument is that Nurse Moylan clearly explained this portion of his opinion as based on the "[e]ffects of pain," not because of frequent uncontrolled diarrhea.  Tr. 1917.  Indeed, neither the Moylan opinion nor the Moylan treating notes support Plaintiff's argument that uncontrolled diarrhea or the need to be near a bathroom is a significant limit on her capacity to work.

[18] Focusing on this symptom, the Court notes that Plaintiff's subjective statements in the function report do not reflect the same level of impairment as she described during her testimony.  Compare Tr. 52-53 (Plaintiff testifies that she uses bathroom five to seven times a day, including need to carry change of clothing for frequent diarrhea accidents), with Tr. 243-244 (in function report, Plaintiff alleges that pain, stiffness, brain fog and fatigue are symptoms that limit her ability to work, with pain limiting her daily activities; only reference to bowel issue is allegation that "constant bathroom trips" affect her sleep).  Similarly, Plaintiff's husband's function report notes that "[Plaintiff] sleeps downstairs in order to be close to bathroom," Tr. 236, but otherwise describes her as able to perform work and other activities of daily living during the day except for exertional limits due to pain.  Tr. 235-242.

impact on the need for access to a bathroom had not prevented her from working, as Plaintiff herself told emergency department providers. Tr. 20 (referencing, e.g., Tr. 521-25). Second, while Plaintiff's abdominal pain worsened in April 2022, the medical record also reflects that episodes of diarrhea were short term, largely associated with diagnoses of infectious disease, and were not the focus of treatment. See, e.g., Tr. 636 (previous episodes of diarrhea linked to shigella toxin or rotavirus); Tr. 639 (at gastroenterology appointment with P.A. Piascik on May 24, 2022, notes reflect that prior episodes of diarrhea linked to infection or toxin; testing revealed "no noted inflammation of small bowel" and no "documentation of actual colitis"; "Pain is her biggest concern"). Nor do Dr. Stein's notes reflect extreme diarrhea; indeed, her clinical observation was that "[d]iarrhea [is] presumed infectious" and that the IBS diagnosis is "without diarrhea." Tr. 1343, 1367, 1398. And by September 2022, Dr. Stein noted that even abdominal pain was "improving." Tr. 1544. Further, as the ALJ correctly noted and the Court's review confirms, the treatment records that the SSA experts did not see do not reflect any worsening in the intensity of this symptom; to the contrary, they reflect improvement with GERD and pain following the January 2023 surgery. Tr. 22 n.5; see also Tr. 1584 (at appointment with Nurse Moylan on November 22, 2022, notes reflect issues only with constipation and completely normal findings on abdominal examination including "no tenderness," as well as overall observations of "no acute distress," no difficulty with ambulation and extremities "[a]ll [n]ormal").

Based on the foregoing, I find no error in the ALJ's finding that Plaintiff can work despite IBS and its impact on bowel movements. I further find no error in the ALJ's finding that Plaintiff's testimony about her need for unscheduled bathroom breaks is inconsistent with the evidence of record. I therefore recommend that the Court affirm the ALJ's determination.

IV.    **Conclusion**

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and the Commissioner's Motion for an Order Affirming his Decision (ECF No. 12) be GRANTED.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 6, 2025